UNITED STATES

v.

**James F. RACHELS, Jr., 352 32 2070, Staff Sergeant (E–6), U. S. Marine Corps.**

**NCM 77 0417.**

U. S. Navy Court of Military Review.

Sentence Adjudged 15 Oct. 1976.

Decided 13 Dec. 1977.

LT Christopher C. Henderson, JAGC, USNR, Appellate Defense Counsel.

CAPT Mark M. Humble, USMCR, Appellate Government Counsel. CAPT Christopher Miller Klein, USMC, Appellate Government Counsel.

Before CEDARBURG, C. J., and ROOT and GREGORY, JJ.

ROOT, Judge:

At a general court-martial with members, the appellant pleaded guilty to, and was convicted of, 11 specifications of larceny and 11 specifications of forgery, in violation of Articles 121 and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 923. As the case reaches this Court, the sentence provides for a reduction to pay grade E–1 and a bad conduct discharge.

Appellant has assigned four errors for our consideration:

I. APPELLANT WAS DENIED A SPEEDY TRIAL.

II. THE ESTABLISHED ATTORNEY–CLIENT RELATIONSHIP BETWEEN THE APPELLANT AND CAPTAIN OLSON WAS WRONGFULLY SEVERED WITHOUT THE CONSENT OF APPELLANT.

III. THE COURT–MARTIAL LACKED PERSONAL JURISDICTION OVER THE APPELLANT AS THE GOVERNMENT FAILED TO COMMENCE ACTION WITH A VIEW TO TRIAL PRIOR TO THE EXPIRATION OF APPELLANT'S ENLISTMENT.

IV. THE STAFF JUDGE ADVOCATE'S REVIEW, TO APPELLANT'S SUBSTANTIAL PREJUDICE, WAS INADEQUATE ON THE EVIDENCE PRESENTED DURING THE SENTENCING STAGE OF TRIAL.

We conclude that the assignments of error lack merit, and affirm. In reaching this conclusion, however, brief comment on the assignments is appropriate.

I.

▇ The theft and forgery of the checks involved in this case occurred during the period of March through August, 1974. The Naval Investigative Service began an investigation into this matter in July, 1974, and, in August, 1974, appellant became a suspect. He verbally confessed to stealing and forging the Government checks which are the basis of the charges in this case, on 22 September 1974. The enlistment of the appellant expired on 2 August 1975 and he was retained beyond that date pending disciplinary action. Sworn charges were not preferred against him until 2 September 1976, and an Article 32, Uniform Code of Military Justice, investigation was commenced on 16 September 1976. The report of that investigation, recommending trial by general court-martial, was made on 17 September 1976. A general court-martial commenced on 14 October 1976 and concluded on 15 October 1976.

We are gravely concerned with the exceptionally long delay in bringing charges against this appellant. The record clearly demonstrates that the Government was in possession of facts that, by the exercise of ordinary expedition, could have been developed into evidence to bring this appellant to trial on a majority of the charges and specifications of which he was ultimately convicted by his own pleas, no later than December, 1975. Failure to perfect the investigation to permit preferral of charges reflects most unfavorably on the Government.

Be that as it may, the appellant was never confined during this period of time, nor were charges ever preferred until 42 days before the trial commenced. Hence, the accused was not denied his right to a speedy trial. *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971) is dispositive of this issue. It provides, in material part: "On a speedy trial issue, the Government's accountability runs from the date the accused is restrained or from the date of the 'formal presentment' of charges, whichever is earlier." *See also United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and *United States v. Amundson,* 23 U.S.C.M.A. 308, 49 C.M.R. 598 (1975). We are constrained to hold that this assignment is without merit.

II.

▇ The appellant complains that an attorney-client relationship between himself

and Captain Olson was wrongfully severed without his consent. The record reveals that Captain Olson entered into an attorney-client relationship with appellant on 20 February 1975, rendering advice regarding the investigation into the charges here concerned. He had subsequent contacts and rendered further advice regarding the investigation. On 21 May 1976, Captain Olson was assigned as a judge to the Marine Corps Special Court-Martial Judiciary and, since that time, has performed judicial duties. At the time of his assignment to the trial bench, Captain Olson was negotiating on appellant's behalf a settlement with the American Express Company, which had cashed the forged checks which are the subject of this court-martial. On 11 August 1976, Captain Olson appeared at office hours representing appellant in connection with the charges now before this Court. At that time, Captain Olson introduced appellant to Captain Cero, the Chief Defense Counsel for Marine Corps Development and Education Command, and indicated to appellant that he, Captain Olson, probably would not be available to act as his defense counsel in any court-martial which might be ordered. On 31 August 1976, appellant formally requested the assignment of Captain Olson as individual military counsel. This request went to Headquarters Marine Corps for resolution and, on 15 September 1976, the request was formally denied on the basis that it was "the policy of the CMDR, (sic) Marine Corps Special Court-Martial Judiciary and the Judge Advocate General of the Navy that full-time judges of the special court-martial judiciary, while serving in that capacity, will not be made available to perform duties as trial and defense counsel at either special or general courts-martial, as such duties would be inconsistent with the performance of their judicial duties as military judges." (Appellate Exhibit I). At trial, appellant renewed his request and, after a hearing on the matter, the request was denied by the military judge for the same reason.

Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b), provides in part that the accused "has the right to be repre-sented in his defense before a general or special court-martial . . . by military counsel of his own selection *if reasonably available* . . . ." (Emphasis supplied). In construing this provision of the statute, the Court of Military Appeals has held:

> It is thus apparent that the right to military counsel of an accused's own selection is not an absolute right granted him, but is subject to the exigencies and practicalities of whatever situation may obtain at the time. Of course, the right to choose counsel in the first instance may not be insisted on in such a manner as to obstruct either other important operations of the service concerned or the orderly administration of military justice. It is also clear that both the Code and the Manual distinctly comprehend the possibility that—if the requested counsel is not reasonably available—the accused will be required to stand his trial represented by counsel appointed by the convening authority, although such counsel may not be the first preference of the accused.

*United States v. Vanderpool,* 4 U.S.C.M.A. 561, 565–566, 16 C.M.R. 135, 139–140 (1954). *Accord United States v. Kilby,* 3 M.J. 938 (N.C.M.R.1977).

Under the circumstances of this case, the denial of appellant's request for Captain Olson's services as individual military counsel (or for the continuation of his services resulting from formation earlier of the attorney-client relationship), for the reasons stated, was reasonable and proper. *See United States v. Spence,* No. 77 1169, 4 M.J. 596 (N.C.M.R. 26 October 1977). We note, in passing, that had the Government exercised due diligence in investigating this case and bringing the appellant to trial, appellant would not have been denied the services of the counsel of his first choice.

We conclude that this assignment is without merit.

### III.

Now the appellant alleges that the court-martial lacked jurisdiction over him

because the Government failed to take sufficient action with a view toward trial prior to the expiration of his enlistment. In *United States v. Hout,* 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970), the Court of Military Appeals held that jurisdiction over the accused did attach despite filing of charges after the expiration of the accused's enlistment where the accused was placed on administrative hold prior to the expiration of this enlistment and where he continued to receive his pay and perform his duties without objection to the failure of the Government to discharge him. In the case at bar, there is no evidence that the appellant desired discharge immediately after the expiration of his enlistment. From his own testimony, it fairly appears that he performed his assigned duties without protest; that, at the end of each day's work, he went to his home which he shared with his wife in the civilian community and returned voluntarily each morning; that he applied for and received leave on at least two occasions during the period between the expiration of his enlistment and his trial; and, that he was regularly paid for his services and had no unusual restrictions on his conduct. From August 1975 until after his trial on 14 and 15 October 1976, therefore, he retained the unqualified status of a person on active military duty subject to the Uniform Code of Military Justice. Indeed, the appellant testified that he, on his own, had initiated the action to place himself on legal hold. Nor did the appellant ever request discharge until 10 September 1976, after the charges had been preferred and it was apparent that he was going to trial. In fact, he testified (R. 6) that his counsel advised him to "just sit tight and wait," apparently hoping that the statute of limitations would expire. This makes sense because, at the time of trial, he had almost 18 years of service. In short, the appellant had much to gain by remaining on active duty to the bitter end and, if the investigation could be dragged out until the first of 1979, he would have acquired 20 years of service and a retirement eligibility.

It is noted that there was a continuing investigation which had focused on the appellant from August, 1974 and that, on 31 July 1975, a letter was directed to the appellant from his Commanding Officer notifying him that he was being retained on active duty beyond the expiration of his enlistment "because of offenses committed, as set forth in your statement of 26 September 1974."

We hold that sufficient action with a view to trial had been taken by appellant's command to establish a continuing jurisdiction over him subsequent to the expiration of his enlistment. It may fairly be inferred from the record that he not only made no request for discharge, but that he preferred to remain on active duty. We are not called upon to decide, and we decline to do so, whether, under other circumstances, the involuntary holding of an accused person past enlistment for a period of 14 months, with the attendant restrictions on conducting his life as he would choose to do, might constitute a violation of due process. Even though an accused who is extended past his enlistment for purposes of trial may be given normal liberty, may be allowed leave, and may have all of the privileges of another person who is serving an enlistment, the fact that he is not free to move away or to take other employment may, after an extended period of time, become an unduly onerous restriction of liberty "with a view to prosecution." If the Government is going to exercise its right to extend an enlistment unilaterally for disciplinary purposes, it has a concomitant responsibility to exercise due dispatch in completing its investigation and in bringing the person to trial. The dismal performance of the Government in this regard in this case cannot be condoned and should not be repeated.

The third assignment of error is without merit.

### IV.

The final assignment of error is that the staff judge advocate prejudiced the appellant by failing to summarize in his post-trial review defense evidence which was submitted in extenuation and mitigation.

Information contained in Defense Exhibits B through H is summarized in the Staff Judge Advocate Review, largely in paragraph 6. Defense Exhibit A consists of numerous entries from appellant's service record book which are not specifically summarized in the post-trial review. The record reflects that, on 31 January 1977, a copy of the post-trial review was served on the trial defense counsel whose response, made on 4 February 1977, failed to make any reference to defense exhibits. We hold that the failure of the trial defense counsel to object to the lack of a more specific recital of the information contained in Defense Exhibits A through H effectively waived any right he may have had in the premises. *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975); *United States v. Barnes,* 3 M.J. 406 (C.M.A.1977).

Accordingly, the findings and sentence as approved on review below are affirmed.

Chief Judge CEDARBURG and Judge GREGORY concur.