232

UNITED STATES, Appellee,

v.

James F. RACHELS, Jr., Staff Sergeant,
U. S. Marine Corps, Appellant.

No. 35,355.

NCM 77 0417.

U. S. Court of Military Appeals.

March 5, 1979.

Appearances: For Appellant—*Lieutenant Christopher C. Henderson, JAGC, USNR* (argued).

For Appellee—*Major D. A. Higley,* USMC (argued); *Commander T. C. Watson, Jr.,* JAGC, USN (on brief); *Lieutenant Commander N. P. DeCarlo,* JAGC, USN.

## Opinion of the Court

COOK, Judge:

In accordance with appellant's pleas of guilty, a general court-martial convicted him of larceny (11 specifications) and forgery (11 specifications), in violation of Articles 121 and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 923, respectively. It sentenced him to a bad-conduct discharge, confinement at hard labor for 2 years, and reduction to E–1. The convening authority approved the findings and so much of the sentence as extended to a bad-conduct discharge and reduction to E–1. His action was affirmed by the United States Navy Court of Military Review. *United States v. Rachels,* 4 M.J. 697 (N.C.M. R.1977). We granted review to consider three issues: Whether the Government improperly severed an attorney-client relationship which existed between the appellant and Captain Dennis O. Olson, USMC, a defense counsel at the Marine Corps Development and Education Command, Quantico, Virginia; whether appellant was denied a speedy trial; and, whether military jurisdiction over the appellant extended beyond the expiration of his term of enlistment.

The offenses were committed while the appellant was attached to the First Marine Air Wing, Iwakuni, Japan, during the period of March through August 1974. Shortly thereafter, appellant was transferred to a military unit in Chicago, Illinois, but his orders were changed before he reported for duty there. In the meantime, appellant, during his leave, consulted a civilian lawyer and, later, provided the Naval Investigative Service with a sworn statement detailing his thefts and forgeries. He reported to "C" Company, Headquarters Battalion, Marine Corps Development and Education

Command (MCDEC), Quantico, Virginia, on October 22, 1974, pursuant to the change in his orders. Charges were not preferred until September 2, 1976. After an Article 32 [1] investigation, they were referred to a general court-martial on September 28; the trial was held at Quantico, Virginia, on October 14 and 15, 1976.

Prior to the commencement of trial, appellant requested Captain Olson as his individual defense counsel. The request was denied on the ground that Captain Olson was then a full-time military judge and the assignment of a full-time judge as either a trial or defense counsel was inconsistent with the policy of the Marine Corps Judiciary. Appellant renewed the request at trial. In support, he testified he had served as the "personnel chief" of "C" Company and, upon inquiring about the status of the investigation against him, his commanding officer had advised him to consult an attorney. He spoke with Captain Olson on February 20, 1975, and was advised by him to "sit tight and wait" for the expiration of the statute of limitations for the offenses. Appellant stated that he followed such advice to "an extent." He spoke with Captain Olson on several occasions and the captain negotiated on his behalf with the American Express Company in regard to restitution of the money obtained from it. Appellant, who had over 16 years of military service, requested that he be placed on legal hold prior to the termination of the scheduled end of active duty, which was August 2, 1975. Captain Olson subsequently represented appellant during Office Hours [2] which were conducted on August 11, 1976. Captain Cero, the counsel who represented appellant at trial, was also present. Captain Olson substantiated appellant's testimony as to his representation. He testified he became a trial judge on May 21, 1976, and, while he felt that he had established an attorney-client relationship with the appellant, he had advised appellant that he might not be able to represent him at trial

---

1. Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832.

2. Proceedings under Article 15, UCMJ, 10 U.S.C. § 815. Presumably, these proceedings involved the same matters as the court-martial.

because of his status as a military judge. Finally, he stated he had performed other duties for the staff judge advocate which were deemed inconsistent with his duties as a military judge, including the writing of "reviews" and "advice letter[s] for NJP appeals," and acting as an instructor to various battalions.

The military judge held that an attorney-client relationship had been established between appellant and Captain Olson, but he denied the request for the captain's appointment as defense counsel because he was a trial judge. Appellant subsequently moved for dismissal of the charges on the basis that jurisdiction over his person did not extend beyond the expiration date of his enlistment and he had been denied a speedy trial. Both motions were denied.

 We first address appellant's request for Captain Olson as counsel. We assume, for the purpose of this appeal, that the attorney-client relationship encompassed the prospective trial and, therefore, the correctness of the military judge's ruling must be resolved by the standard applicable to severance of an existing relationship rather than a mere denial of a request for counsel. As the Court observed in *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972), the standard is "good cause," rather than one of reasonable availability, and circumstances that establish the latter need not necessarily establish the former. *Accord, United States v. Iverson*, 5 M.J. 440 (C.M.A.1978); *see also United States v. Timberlake*, 22 U.S.C.M.A. 117, 46 C.M.R. 117 (1973). Mere administrative convenience is insufficient to establish the requisite "good cause." *United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970); *United States v. Tellier*, 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962).

██ The parties disagree as to whether a military judge comes within the prohibition set forth in 28 U.S.C. § 454 against the practice of law by "[a]ny justice or judge appointed under the authority of the United States." As the term "judge of the United States" is defined in 28 U.S.C. § 451 as "judges of . . . any court created by Act of Congress, the judges of which are entitled to hold office during good behavior," we conclude the statute is inapplicable to military judges.

This does not end our inquiry, however. Canon 5 F, American Bar Association Code of Judicial Conduct, provides: "A judge should not practice law." This Court has previously noted the potential for the improper influence by the appearance of a judge (other than the presiding judge) in a judicial proceeding. *United States v. Tomchek*, 4 M.J. 66 (C.M.A.1977).[3] We further note that ABA Formal Opinion 343 contains the following:

26. May a full-time or part-time military judge or military magistrate provide legal assistance?

Military judges seemingly are within the Code of Judicial Conduct. Part-time judges are excused from those portions enumerated in paragraph A of the compliance section of the Code of Judicial Conduct. This would permit "practice of law" in the form of legal assistance. Full-time judges are not permitted under the Code of Judicial Conduct to practice law.

The distinction between full-time and part-time military judges was recognized in the Senate Report accompanying the Military Justice Act of 1968, P.L. 90–632 (82 Stat. 1335), which stated:

Proposed new subsection (c) will enact into law the general principles of the "independent field judiciary" system already adopted administratively by some of the armed services, while leaving to the services a desirable degree of flexibility for implementing improvements in detail which may be indicated by additional experience. The intent is to provide for the establishment within each service of an independent judiciary composed of military judges certified for duty on general courts-martial, who are assigned di-

---

**3.** I dissented in *United States v. Tomchek*, 4 M.J. 66, 75 (C.M.A.1977), on the basis that the judge's appearance as a witness was not voluntary.

rectly to the Judge Advocate General of the service and are responsible only to him or his designees for direction and fitness ratings. *Rules for designating and detailing military judges of special courts-martial are left subject to regulations of the Secretary concerned. This will permit the establishment of special lists of junior judge advocates who can be utilized for other duties while serving as military judges of special courts-martial in preparation for later assignment to general courts-martial.* [3 U.S.Code Cong. & Admin.News, pp. 4507–08 (1968)] [emphasis added.]

■ Appellant submits that Canon 5 F should not be applied in a manner to justify the severance of an attorney-client relationship and, in any event, Captain Olson testified that he had performed duties for the staff judge advocate which were inconsistent with such canon. We do not view the canon as establishing an absolute prohibition against the use of a trial judge as a defense counsel in a case unrelated to his own court because such factor is not set forth in the Uniform Code of Military Justice as disqualifying him from participating in the proceedings. *See* Article 27(a), UCMJ, 10 U.S.C. § 827(a). However, the canon which establishes a strong policy against such representation has been adopted for the Marine Corps Special Courts-Martial Judiciary. Appellant's argument that Captain Olson's performance of other duties precludes the Government from now asserting Marine Corps' policy is without merit. Initially, we note that Captain Olson's performance of other duties was consistent with the establishment of the Marine Corps Special Courts-Martial Judiciary. *See* para. 3, enclosure 1, SECNAVINST 5813.7. In any event, we need not resolve the issue as we are concerned here with his participation in court-martial proceedings, which is inconsistent with the policy adopted for the Marine Corps Special Courts-Martial Judiciary relating to the participation of trial judges as advocates before courts-martial. In the present case, appellant was provided substitute counsel prior to trial. Indeed, Captain Olson testified

that Captain Cero was present during appellant's "office hours." There is nothing in the record to reflect that appellant's defense was inhibited by the substitution of counsel. Under the circumstances, we conclude that the policy adopted for the Marine Corps Special Courts-Martial Judiciary established "good cause" for the severance of the attorney-client relationship.

■ We turn now to the speedy trial issue. Appellant was never confined as a result of his commission of the offenses in question. Thus, we are not concerned with the presumption of a denial of speedy trial established in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). Appellant testified that he performed normal duties and was permitted to take leave and enjoy all the other privileges of his military status. On appeal, he submits that his retention beyond his enlistment period resulted in oppressive burdens equivalent to arrest. This contention is contradicted by the facts of record, and we have previously held that retention beyond the expiration of an enlistment is not equivalent to arrest. *United States v. Amundson*, 23 U.S.C.M.A. 308, 49 C.M.R. 598 (1975). Indeed, appellant actively sought the extension of his enlistment. Furthermore, while appellant submits, on appeal, that his inquiries as to the status of his case should be equated to a demand for trial, the contrary appears in the record as appellant followed his attorney's advice regarding the possible expiration of the statute of limitations. While appellant's defense counsel subsequently submitted a demand for trial, this did not occur until September 10, 1976, after charges had been preferred. Although the delay in the present case was extensive, we find no prejudice to appellant and hold there was no denial of a speedy trial. *See United States v. Nelson*, 5 M.J. 189 (C.M.A. 1978). Similarly, we reject appellant's argument that he was denied due process. *See United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

■ Although we have rejected the appellant's claim that he was denied a speedy trial, we cannot leave this case without noting the unusually long period between the date of the offenses and appellant's trial. The Court of Military Review concluded that the Government, "by the exercise of ordinary expedition," could have brought the appellant to trial on a majority of charges and specifications "no later than December, 1975." *United States v. Rachels,* *supra,* at 698. Obviously, the Government did not exercise "ordinary expedition" in the present case. Perhaps the Government's lack of concern was generated by appellant's "sit and wait" strategy in the apparent hope that the Government would forget the matter. However, the Government's indifference cannot be excused by the appellant's strategy as such delays reflect adversely upon the military justice system, and we cannot condone an attitude of indifference simply because it is consistent with a defense strategy. The military, as well as the accused, has an interest in the expeditious resolution of court-martial proceedings. Having found no prejudice to the appellant, we are unwilling to reverse, but we caution the persons responsible that such delays will not be tolerated.

■ Finally, the remaining assignment of error, which questions the continuation of military jurisdiction over appellant's person after the expiration of his term of enlistment has been resolved against the appellant in *United States v. Hutchins,* 4 M.J. 190 (C.M.A.1978).

The decision of the United States Navy Court of Military Review is affirmed.

Chief Judge FLETCHER and Judge PERRY concur.