UNITED STATES

v.

Alberto ONATE, 559 29 2933, Private (E–1), U. S. Marine Corps.

NCM 78 1202.

U. S. Navy Court of Military Review.

Sentenced Adjudged 2 June 1978.

Decided 20 March 1979.

LT Michael F. Fink, JAGC, USNR, Appellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate Government Counsel.

Before BAUM, Senior Judge, and MICHEL and GRANGER, JJ.

BAUM, Senior Judge:

Appellant has assigned three errors before this Court. The first two are summarily rejected. The third merits discussion.

In his last assignment, appellant contends that the military judge erred in denying the defense challenge of him for cause. The challenge was based in part on the fact that after assuming the bench, the judge had continued to act as a court-martial review officer by writing two reviews for the staff judge advocate, both of which were unrelated to this case and completed before appellant's trial. Furthermore, while a member of the trial judiciary, the military judge continued to perform duties as advisor to the Marine Exchange, continued a certain amount of work as command labor counsel, and continued to act as counsel in a suit against the Department of the Navy involving a civil service employee. The judge made it clear that the staff judge advocate did not write his fitness reports and that no pressure had been brought to bear upon him because of work for the staff judge advocate. The military judge stated that he had "absolute discretion to refuse anything of that nature," that he was able to sit independently in this case even though he had done some work for the staff judge advocate, and that he perceived no problems because of this work that would warrant recusing himself. Despite these assurances, appellant challenged the judge for cause and the challenge was denied.

Appellant now asserts before this Court that the judge's denial of the challenge was error because of violations of Canon 5 F of the Code of Judicial Conduct, which admonishes that "a judge should not practice law," and Standards §§ 1.5 and 1.7, with commentaries, in the American Bar Association Standards relating to the Function of the Trial Judge. A.B.A. Standards §§ 1.5 and 1.7, distinct in scope and purpose from Canon 5 F, emphasize the importance of recusal when the judge has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can reasonably be questioned. In that regard, appellant notes that the commentary to Standard § 1.5 states: "Any appearance that suggests a special relationship between the district attorney's office and the judiciary is certain to create doubts concerning the impartial administration of justice." Appellant then poses the rhetorical question, "What more special relationship could there be with the military's equivalent to the district attorney's office than to have the military judge actually composing the reviews on which the staff judge advocate will later sign off!" *See United States v. Morrison*, 3 M.J. 408 (C.M. A.1977), where Chief Judge Fletcher in his opinion concurring in the result equates the staff judge advocate with chief prosecutor for the command.

At the outset, we note that, despite the Government's statement to the contrary, the Code of Judicial Conduct has been made applicable to Navy and Marine Corps trial judges by regulation. Section 0152 and appendix A–1–p(1) of the *Manual of the Judge Advocate General of the Navy* (JAG Manual) make the American Bar Association's Code of Judicial Conduct specifically applicable to Navy and Marine Corps trial judges. Also applicable are the A.B.A. Standards relating to The Function of the Trial Judge, unless the standards are clearly inconsistent with the Uniform Code of Military Justice, the JAG Manual and applicable departmental regulations. Accordingly, seeing nothing in these two standards which is inconsistent with the Uniform Code of Military Justice, the *Manual for Courts-Martial, United States, 1969* (Revised edition), the JAG Manual, or other Navy Department regulations, we find the Standards cited by appellant to have been applicable to the judge in this case.

Canon 5 F of the Code of Judicial Conduct says, without commentary, that a judge should not practice law. The record is unclear as to the services the military judge rendered to the Marine Exchange or in connection with command labor matters. Assuming he gave legal advice in these areas, we have no difficulty in concluding that these duties entailed practicing law. Certainly, the judge's role as an associate attorney in a law suit involves the practice of law in its purest sense. Regarding the drafting of staff judge advocate reviews, there is no evidence that the judge was reviewing cases at the time of this trial. It

is clear, however, that he had performed such services since assuming the bench. The drafting of a staff judge advocate review entails rendering advice as to the legal sufficiency of court-martial proceedings and recommending appropriate disposition of criminal judicial proceedings. The military judge thereby assists the staff judge advocate in preparing advice to his client, the general court-martial authority. This assistance is practicing law. We conclude that these extra-judicial activities of the military judge were contrary to the rule set forth in Canon 5 F of the Code of Judicial Conduct.

The Department of the Navy, however, adopted *in toto* the Code of Judicial Conduct, which includes the "Compliance" provision, paragraph *A* of which provides that part-time judges are not required to comply with Canon 5 F and certain other provisions. The definition of a "part-time judge" includes those who serve on a continuing basis but are permitted by law to devote time to some other profession or occupation "and whose compensation for that reason is less than that of a full-time judge." Even a part-time judge, however:

[S]hould not practice law in the court on which he serves or in any court subject to the appellate jurisdiction of the court on which he serves, or act as a lawyer in a proceeding in which he had served as a judge or in any other proceeding related thereto. [Compliance provision A(2)].

■ The Code of Judicial Conduct espouses the norm that, in the judgment of the American Bar Association, judges should observe. Generally speaking, states adopting the Code of Judicial Conduct have not done so without making substantial changes or substitutions deemed necessary to harmonize the Codal provisions with the customs and practices of the particular state. *See, e. g., National College Of The State Judiciary, Ethics for Judges* Ch. IV (2d ed. 1975). Courts within the military justice system are courts of limited jurisdiction. Their trial judges are military personnel governed by military regulations, many of which regulations have nothing to do with judicial duties. It would seem that careful tailoring and selective adoption of certain provisions of the Code of Judicial Conduct would have been the most appropriate course for the naval service, but, curiously, the Code has been adopted without change or reservation. It therefore requires imaginative and, frequently, tortured construction when attempts are made to apply the canons to military judges' conduct.

■ SECNAVINST 5813.7 of 18 June 1974, establishing the Marine Corps Special Court-Martial Judiciary, calls for "full-time" judges, but further provides that the judge can be made "available for the performance, outside the Judiciary, of legal duties of a nature not incompatible with his status as a military judge." Ignoring the inapplicable language regarding compensation in the Compliance provision of the Code of Judicial Conduct, when we apply the provision to this case, we conclude that the military judge here, when made available for other duties, is a judge who serves on a continuing basis but is permitted by law to devote time to some other profession or occupation. He, therefore, is a part-time judge under the definition of the Code of Judicial Conduct and is not required to comply with Canon 5 F. He nevertheless "should not practice law . . . in any court subject to the appellate jurisdiction of the court on which he serves . . . ." Writing reviews of courts-martial subject to the appellate jurisdiction of this Court would appear to violate the Code of Judicial Conduct. This issue was not addressed in *United States v. Rachels,* 6 M.J. 232, (C.M. A.1979), which concerned itself only with the question of a judge acting as counsel before a court-martial. It appears that the Court of Military Appeals, in deciding *Rachels,* may have been unaware that the Code of Judicial Conduct had been made applicable in its entirety by regulation to the Navy and Marine Corps. In light of the Code's applicability, we view Canon 5 F as strictly prohibiting a full-time judge and the Compliance provision as strictly prohibiting a part-time judge from acting as coun-

sel before a court-martial, as well as writing staff judge advocate reviews.

■ The military judge, while a member of the bench but prior to the trial in this case, thus, had acted in a manner violative of the Code of Judicial Conduct. We find, however, no way in which appellant's trial could have been affected by this technical violation. With regard to the A.B.A. Standards Relating to the Function of the Trial Judge, §§ 1.5 and 1.7, we find that the conduct of the military judge in this case did not reasonably engender a perception of bias, partiality, or unfairness. Although working for a staff judge advocate, in some cases, may well be inconsonant with these standards, we do not find the A.B.A. Standards §§ 1.5 and 1.7 to have been violated under the circumstances of this case. We therefore hold that the military judge did not err in denying appellant's challenge for cause.

Our conclusions in this case do not mean that similar extra-judicial duties will not constitute violations of the A.B.A. Standards, as well as the Code of Judicial Conduct in other cases. Furthermore, depending on the facts, such conduct may require recusal of the judge in a particular case. Until such time as the Code of Judicial Conduct is tailored by appropriate authority to fit the unique needs and requirements of the military justice system, military judges who perform other duties that constitute practicing law may be violating the A.B.A. Standards and the Code, depending on the circumstances. Those military judges who draft staff judge advocate reviews of courts-martial reviewable by this Court should recognize that they are violating the Code of Judicial Conduct adopted by the Judge Advocate General and may be committing prejudicial error by not recusing themselves when challenged. Notwithstanding any future retailoring of the Code of Judicial Conduct, work performed for a staff judge advocate by a military judge may constitute grounds for disqualification in a particular case.

The findings and sentence as approved below are affirmed.

GRANGER, Judge (concurring):

I concur in Senior Judge Baum's analysis of the Code of Judicial Conduct as it applies to military judges.

Defense counsel's salient argument seems to be that a military judge who drafts staff judge advocate reviews violates the Code and the A.B.A. Standards, and that such misconduct calls for the judge's recusal. I do not agree. The fact that a court-martial is presided over by a military judge who has violated the Code of Judicial Conduct or the A.B.A. Standards is not, *per se*, grounds for setting aside the guilty findings and sentence of the court. See *People v. Green*, 274 N.W.2d 448 (Mich.Sup.Ct.1979). The crucial issue in this Court is what impact, if any, the alleged misconduct has upon the fairness of that particular court-martial. In this case, the violation noted in the principal opinion had no impact upon this court-martial and presents no basis for disturbing the findings or sentence.

Generally speaking, aside from the technical Codal violation discussed in the principal opinion, and the limited prohibition found in Article 6, Uniform Code of Military Justice, 10 U.S.C. § 806, there is nothing improper about military judges drafting staff judge advocate reviews. Procrustean efforts to fit the military justice system into the mold of civilian systems provide more diversion than insight, and tend to confuse the issue. Thus, I cannot accept appellate defense counsel's conclusion that the staff judge advocate's office is the military equivalent of a civilian district attorney's office. The differences between staff judge advocates and district attorneys dwarf their similarities to the point that comparison is meaningless. Similarly, Chief Judge Fletcher's observation in *United States v. Morrison*, 3 M.J. 408 (C.M.A. 1977) (concurring in the result), that the duties of the staff judge advocate include the responsibilities of being the chief prosecutor, is misleading when taken out of context. The only prosecutors in courts-martial are those advocates appointed by the convening authority as trial counsel for a

particular case. The staff judge advocate is no more nor less the chief prosecutor than he is the chief defense counsel, or the chief court reporter, or the chief clerk. To the extent that he supervises the processing of courts-martial, he is responsible for seeing that the entire system is run properly, in accordance with the law.

Those interested in defining the court-martial duties of the staff judge advocate could more profitably abandon analogies with civilian practice and instead study the Uniform Code of Military Justice and the *Manual for Courts-Martial*. *See* Articles 34 and 61, Uniform Code of Military Justice, 10 U.S.C. §§ 834, 861, and paragraphs 30*d*, 35*b*, 52 and 85, *Manual for Courts-Martial, United States, 1969* (Revised edition). Those who simply cannot accept the fact that the military justice system is unique, however, and who wring their hands when unable to anchor their military justice concepts in civilian practice, might be comforted and would not be misled by another of Chief Judge Fletcher's comparisons in *Morrison* to the effect that the staff judge advocate is, for all practical purposes, the chief counsel for the command. He gives legal advice to the commander. This is not a prosecutorial function. There is nothing inherently prosecutorial about the staff judge advocate's review prepared in accordance with Article 61, Uniform Code of Military Justice. That document is an *impartial* legal opinion regarding the record of trial under consideration. *See United States v. Morrison, supra,* n. 14 at 412, and cases there cited. When the military judge drafts a proposed staff judge advocate's review, therefore, he is not doing prosecutor's work. He is reading other judges' records of trial, impartially analyzing the legal issues involved and reducing his analysis to writing. Any trial judge would profit from this effective means of continuing professional education.

If the drafting of staff judge advocate reviews engenders a perception of impropriety, it arises from the relationship of the parties involved in a given case, and not from the work itself. In each case, the facts must be examined to determine if the judge's extra-judicial duties affected the accused's court-martial to the accused's prejudice, or if the circumstances create the appearance of such prejudice. There is no such prejudice or appearance of prejudice in this case.

I concur in affirmance of the findings and sentence.

**MICHEL, Judge (concurring):**

I concur for the reasons stated by Judge Granger.