**UNITED STATES, Appellee,**

v.

**Specialist Five Richard P. WALLACE, SSN 308–68–5318, United States Army, Appellant.**

**CM 438909.**

U. S. Army Court of Military Review.

10 Dec. 1982.

---

Captain Kenneth G. Gale, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, Major Joyce E. Plaut, JAGC, Captain H. Franklin Young III, JAGC, and Henry C. Karlson, Esquire.

Captain Arthur L. Passar, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, and Major Thomas M. Curtis, JAGC.

Before FULTON, CLAUSE and FOREMAN, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

FOREMAN, Judge:

Contrary to his pleas, the appellant was convicted of possession of cocaine, sale of cocaine, and possession of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 834 (1976). He was sentenced to a bad-conduct discharge, confinement at hard labor for four years, and total forfeitures. The convening authority approved the sentence. When this case first came before this Court for mandatory review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976), we set aside the action of the convening authority because the record was improperly authenticated and the defense counsel had not been given five days to comment on the staff judge advocate's post-trial review, as required by *United States v. Goode,* 1 M.J. 3 (C.M.A.1975); *United States v. Wallace,* CM 438909 (ACMR 30 June 1981) (unpub.). The record is again before us, properly authenticated and reviewed. The appellant now challenges the denial of his request for individual military counsel, the lawfulness of a search of his off-post residence, the adequacy of the chain of custody of the fruits of the search, the admissibility of government rebuttal testimony, the military judge's failure to call a witness, the sufficiency of the evidence, and the propriety of the government's severance of the attorney-

client relationship between the appellant and his counsel after the trial.

### I. Request for Individual Counsel

The appellant contends that his request for individual military counsel was improperly denied. Prior to commencement of the Article 32 investigation,[1] the appellant requested that Captain Thomas Bowe, then stationed at Camp Humphreys, Korea, be made available as individual defense counsel. The request was denied by Brigadier General Pendleton, Commander, 19th Support Command. The appellant then requested Captain Warren Hall, stationed at Rock Island Arsenal, Illinois. Captain Hall was made available and defended the appellant at both the Article 32 investigation and the subsequent trial by general court-martial.

The appellant appealed General Pendleton's decision regarding Captain Bowe to the Commander, Eighth United States Army, who upheld General Pendleton's determination. The appellant unsuccessfully contested the decision before the trial judge and now raises the issue on appeal.

General Pendleton's decision to deny the request for Captain Bowe was based on several factors: that Captain Bowe was the command judge advocate for the Camp Humphreys area; that only one other judge advocate, a defense counsel, was assigned to Camp Humphreys; that Captain Bowe was the trial counsel in nine pending cases (reduced to seven as of the appellant's trial date); that Captain Bowe was working a 6-day work week; that Captain Bowe was responsible for providing legal assistance and claims services for the 5000 military personnel in the Camp Humphreys area; that the command was understrength, operating with an authorization for twelve judge advocates but an actual strength of eight judge advocates. General Pendleton's staff judge advocate characterized the impact of making Captain Bowe available by stating that "his absence would just about wipe out the Judge Advocate operation" at Camp Humphreys.

■ When a request for individual military counsel is denied, there must be "a sound reason for denying to the accused the services of the representative whom he seeks." *United States v. Cutting,* 14 U.S.C. M.A. 347, 351, 34 C.M.R. 127, 131 (1964). However, the burden is on the defense to show that the decision was incorrect. *United States v. Smith,* 3 M.J. 912 (A.C.M.R. 1977).

■ The requested counsel's caseload is a factor, but not the only factor. *United States v. Kelker,* 4 M.J. 323 (C.M.A.1978). Counsel may be reasonably available in spite of a workload requiring more than a 40-hour work week. *United States v. Quinones,* 1 M.J. 64 (C.M.A.1975). However, if the absence of the requested officer would "obstruct either other important operations . . . or orderly administration of military justice," there may be a reasonable basis for refusing to make the officer available. *United States v. Gatewood,* 15 U.S.C.M.A. 433, 435, 35 C.M.R. 405, 407 (1965); *see United States v. Wager,* 10 M.J. 546 (N.C. M.R.1980) (officer not reasonably available because of important duties in the Office of The Judge Advocate General); *United States v. Brown,* 2 M.J. 627 (A.F.C.M.R. 1976) (officer not reasonably available because of full-time trial counsel duties).

■ While Captain Bowe's court-martial workload may have been unremarkable and his six-day work week not unusual for a remote overseas duty station, we believe that his position as "command judge advocate" for the Camp Humphreys area, and the necessity to assign another officer from an understrength command to perform his duties in his absence provides a reasonable and sound basis for refusing to make him

---

1. No charge or specification may be referred to a general court-martial until there has been a formal investigation which "shall include inquiry as to the truth of the matter set forth in the charges, consideration of the form of charges, and a recommendation as to the disposition which should be made of the case in the interest of justice and discipline." Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832 (1976).

available for a period of four to eight weeks to act as individual defense counsel.[2]

However, the appellant contends that the fact that Captain Bowe was permitted to take a 30-day leave demonstrates that his absence would not have been detrimental to his command. We disagree. In the first place, leave is an entitlement. Army commanders are directed "to encourage and assist all members to use, on the average, their entire 30 days leave each year." Army Regulation 630–5, Personnel Absences, Leave, Passes, Administrative Absence, and Public Holidays, 15 June 1975, as amended, paragraph 2–5. In a remote overseas area, the importance of leave as a means of maintaining morale and efficiency is doubly important. In order to make Captain Bowe available, General Pendleton would have been required to arrange for another officer to perform his duties for a period of eight to twelve weeks (four of which would be attributable to Captain Bowe's leave), even if he rescheduled Captain Bowe's leave. We are satisfied that the impact of Captain Bowe's absence on an understrength command would have been substantial enough to constitute a sound reason to deny the request. We find the assigned error without merit.

## II. The Search Authorization

The appellant's conviction of possession of cocaine and marihuana was based on the seizure of a quantity of cocaine and marihuana from appellant's off-post quarters by German and United States police authorities. The search was authorized in writing by Colonel Prather, Heilbronn Community Commander. The appellant attacks the lawfulness of the search on two grounds: (a) the search authorization was based on information from an agent of the US Army Criminal Investigation Command (CID) who intentionally withheld material facts from Colonel Prather; and (b) Colonel Prather was not the "neutral and detached magistrate" required by *United States v. Ezell*, 6 M.J. 307 (C.M.A.1979). When the case was first before us, the appellant also contended that the record does not demonstrate that Colonel Prather had authority to authorize an off-post search. Since that assignment of error has not been withdrawn we will address it.

### A. The Request for a Search Authorization

The appellant contends that Special Agent (SA) Daniels, who requested the search authorization, intentionally withheld material information from Colonel Prather, the authorizing officer, thereby invalidating the search authorization.[3]

When SA Daniels asked Colonel Prather to authorize a search of the appellant's residence, he supported his request with an affidavit in which he stated that a confidential informant had purchased cocaine and hashish from the appellant twice a month for the past two years, and that the informant had seen 10 to 15 grams of cocaine in the appellant's living room on the morning of the search request. The affidavit further stated that the informant had pointed out the appellant's apartment and had given a detailed description of the interior, including the specific locations where the drugs were kept. The affidavit stated that the informant had provided information which SA Daniels had been able to verify as accurate, *i.e.*, the identity of the appellant's girlfriend and the names of known drug users including the appellant. SA Daniels' affidavit concludes by stating that "the informant is not pending charges or discipli-

---

**2.** This case was tried prior to the issuance of Executive Order 12340, 20 January 1982, which amended paragraph 48 of the Manual for Courts-Martial, United States, 1969 (Revised edition). Paragraph 48*b*(3) now prohibits a "principal legal adviser to a command, organization, or agency" from being made available as individual military counsel unless there is an existing attorney-client relationship.

**3.** Although the appellant refers to a "warrant" issued by Colonel Prather, this case involves a commander's search authorization, not a warrant. "[E]ven if [a commander] gives written authorization for a search and seizure and labels the document a 'warrant,' the document still is not a 'warrant' within the contemplation of the Fourth Amendment, for the commander is not a true 'magistrate.'" *United States v. Stuckey*, 10 M.J. 347, 361 (C.M.A.1981).

nary action in his unit and has no apparent reason to not tell the truth since he is supposed to stay the night with WALLACE this evening."

In addition to the matters in the affidavit, SA Daniels orally informed Colonel Prather that the informant was due to depart Germany on the following day and that the informant had never been used before in a criminal investigation.

The appellant contends that SA Daniels intentionally omitted the following facts from his request for a search authorization: that the informant had sold $21,000 worth of cocaine and a kilo of hashish, that the informant was not advised of his rights before providing information regarding the appellant, and that the informant was led to believe that he would not be permitted to return to the United States until he cooperated with the CID.

■ The withholding or misrepresentation of material facts from the authorizing official may invalidate a search authorization if it is intentional or due to a reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Thomas*, 1 M.J. 397 (C.M.A.1976). SA Daniels testified that he was unaware of the informant's involvement in a $21,000 sale of cocaine or a sale of a kilo of hashish, and there is no evidence of record that the sale actually occurred or that SA Daniels or any other police official was aware of it.

■ Even if the sale had occurred and was known to the CID, we do not believe that failure to mention it would have been a material omission, since the informant's deep involvement in the drug scene was clearly portrayed by SA Daniels' affidavit stating that the informant had been purchasing drugs regularly from the appellant for two years.

The CID agents testified that they did not advise the informant of his rights because they regarded him as a witness, not a suspect. However, we believe that failure to inform Colonel Prather of this fact was neither a material omission nor was it in-

tentional. While an unwarned confession or admission is considered "involuntary" if offered against the declarant, its characterization as "involuntary" is a legal fiction, employed as a prophylactic rule of evidence designed to deter police misconduct and insure that suspects do not unwittingly waive important constitutional rights before cooperating with police authorities. A statement which is "involuntary" solely by virtue of having not been preceded by the required warnings does not necessarily raise doubts about the truth of its contents, unless it is also "involuntary" as a result of threats, coercion or duress employed to obtain it. Any doubt surrounding the informant's unwarned statement in this case extends only to whether he knowingly and intelligently waived his constitutional rights before making it, but not to the truthfulness of the statement.

Turning lastly to the fact that the informant believed that he would not be allowed to depart the command until he cooperated with the CID, we accept as true the informant's assertion that he thought he would not be allowed to clear his unit until he was interviewed by SA Daniels. However, we do not believe that the record shows any intentional misrepresentation of a material fact by SA Daniels. In the first place, SA Daniels went to considerable length to assure the informant that he was not under any pressure to provide specific information. The informant's only obligation was to talk to the CID, not to give any specific information. Lastly, the informant asserted, both at trial and in his pretrial interview with SA Daniels, that his information was true, notwithstanding the fact that it was given reluctantly. The informant's reluctance is understandable, since he had a longstanding amicable relationship with the appellant, was staying as a guest in the appellant's apartment, and was depending on the appellant for transportation to the airport on the following day.

## B. The Disqualification of the Authorizing Officer

■ The appellant contends that the authorizing officer, Colonel Prather, was dis-

qualified to issue a search authorization because he was not a "neutral and detached magistrate." *See United States v. Ezell,* 6 M.J. 307 (C.M.A.1979).[4] This contention is based on evidence that Colonel Prather, as community commander, was regularly briefed on and interested in drug suppression measures being employed by CID agents in his geographical area of responsibility. He testified that he had not disapproved any requests for search authorization in all twenty-five cases considered by him during his tenure as commander. The appellant contends that such evidence demonstrates Colonel Prather's "obvious, intractable attitude toward drug suppression."

We believe that the appellant misreads *Ezell.* An authorizing officer is not disqualified for being opposed to crime, but rather for being actively engaged in a particular criminal investigation. While the evidence supports appellant's contention that Colonel Prather was opposed to drug offenses, there is no indication that he was actively participating in ferreting out evidence of appellant's offenses. The evidence establishes only that Colonel Prather was discharging his responsibilities as community commander. Contrary to appellant's assertions, Colonel Prather's testimony reflects considerable sensitivity to the need to avoid damaging the reputation or invading the privacy of soldiers under his command. We find the assignment of error without merit.

### C. The Authorizing Officer's Authority Regarding Off-Post Searches

■ When this case was first before us, the appellant contended that Colonel Prather did not have the authority to authorize a search of appellant's off-post apartment. Although not reasserted in the second as-

signment of errors, the issue was not treated in our previous decision and the assignment of error has not been withdrawn. Colonel Prather specifically testified, without contradiction, that Offenau was within his area of responsibility. The authority of a military commander to authorize off-post searches of nonmilitary property in a foreign country has been recognized in paragraph 152 of the Manual for Courts-Martial, United States, 1969 (Revised edition) (incorporated into Mil.R.Evid. 315(c)(4)(B) after appellant's trial). The treaty between the United States and Germany recognizes the right of United States military police in Germany to exercise law enforcement powers but further provides that "the details of the exercise of the right shall be agreed upon between the German authorities and the authorities of the force, who shall maintain close mutual liaison." Article 28, Supplementary Agreement to the North Atlantic Treaty Organization Status of Forces Agreement with Respect to Forces Stationed in the Federal Republic of Germany, 1 U.S.T. 531, 559–60.

However, in *United States v. Reagan,* 7 M.J. 490 (C.M.A.1979), Chief Judge Fletcher stated that the provisions of the Manual for Courts-martial as well as the Army and US Army Europe regulations purporting to authorize US Army commanders to authorize off-post searches were insufficient to prove authority to authorize off-post searches in Germany, because "one of the parties to an international treaty cannot enlarge the terms of the original treaty." *Id.* at 491. However, the Court of Military Appeals subsequently has held that such international agreements do not confer any right on an accused to object to the admission of the evidence. *United States v. Whiting,* 12 M.J. 253 (C.M.A.1982); *United States v. Bunkley,* 12 M.J. 240 (C.M.A.1982). Accord-

---

**4.** The Court of Military Appeals has rejected the notion that a military commander who authorizes a search in accordance with paragraph 152 of the Manual is a "magistrate." As explained by Chief Judge Everett: "Paragraph 152 of the Manual for Courts-Martial, in which the President empowered commanders to authorize searches and seizures as to persons and property under his command, was not promul-

gated because the commander could by legalistic legerdemain be transmuted into a magistrate; but instead this was done because, in light of the responsibilities imposed upon the commander, it was reasonable to give him this power." *United States v. Stuckey,* 10 M.J. 347, 359 (C.M.A.1981); *see United States v. Ezell,* 6 M.J. 307, 328 (C.M.A.1979).

ingly, we find the assigned error without merit.

### III. The Chain of Custody

The appellant contends that the prosecution failed to establish a complete chain of custody for four prosecution exhibits: Prosecution Exhibit 3, purporting to be the paper packet of cocaine purchased by the informant from the appellant immediately preceding the search of the appellant's apartment; Prosecution Exhibits 14 and 16, purporting to be hashish seized from the appellant's apartment; and Prosecution Exhibit 17, purporting to be cocaine seized from the appellant's apartment. The appellant contends that the chain of custody is deficient in two particulars: (a) there is no evidence that Prosecution Exhibit 17 is the same substance as was contained in the paper packets (Prosecution Exhibits 17–1, 17–2 and 17–3) seized from the appellant's apartment, and (b) two items not listed on the chain of custody document (DA Form 4137) were found in the package when it arrived at the crime laboratory. We find the appellant's contentions without merit.

Regarding Prosecution Exhibit 3, the packet of cocaine, the evidence establishes that the informant, representing the packet to have been purchased from the appellant, handed it to SA Leggett, who placed it in his pocket. After the search of the appellant's apartment, SA Leggett initialed the packet and turned it over to SA Davis, the evidence custodian, who sent it to the crime laboratory by registered mail and later received it by registered mail from the laboratory with the chemist's report and handwriting examiner's report. When the exhibit was returned from the laboratory, the powder had been removed and placed in a plastic container.

Military Police Investigator Neumann testified that during the search of appellant's apartment he found some "green matter" (Prosecution Exhibits 14 and 16) in a "discwasher" box inside the appellant's boot, which was beneath an ironing board in the appellant's bedroom. Inside the same "discwasher" box were three paper packets (Prosecution Exhibits 17–1, 17–2 and 17–3) containing a powder subsequently determined to be cocaine. Neumann placed the "green matter" and paper packets in a plastic bag, transported them to his office where he secured them in his safe, and gave them to SA Davis, the evidence custodian, on the following day. SA Davis transmitted all of the items seized in appellant's apartment, as well as the packet purchased by the informant (Prosecution Exhibit 3), to the crime laboratory by registered mail. At the laboratory the evidence custodian, a Mr. Worth, received the package by registered mail. He observed no evidence of tampering. However, upon inventorying the contents he discovered two items, a "discwasher" instruction booklet and a small bag of marihuana (Prosecution Exhibit 13), which were not listed on the chain of custody document. Mr. Worth notified SA Davis of the discrepancy and prepared a new chain of custody document which added the two omitted items.

At the laboratory a fingerprint examiner, Mr. Hamm, removed the powder from the packet received from the informant (Prosecution Exhibit 3) and placed it in a plastic container. He likewise removed the powder (Prosecution Exhibit 17) from the three packets seized from appellant's apartment (Prosecution Exhibits 17–1, 17–2 and 17–3). Both Prosecution Exhibits 3 and 17 were determined to be cocaine. The appellant's fingerprints were found on the packet obtained from the informant (Prosecution Exhibit 3), as well as a plastic bag containing hashish (Prosecution Exhibit 13), and one of the packets seized from the apartment (Prosecution Exhibit 17–2).

All the persons listed on the chain of custody document identified Prosecution Exhibits 3, 14, 16 and 17. The removal of the powder from the paper packets was explained by the fingerprint examiner. There was no evidence of tampering with any of the packages. The only discrepancy in the handling of the evidence was the failure of SA Davis to list Prosecution Exhibit 13 and the "discwasher" booklet on the chain of custody document.

We are satisfied that the government adequately established the chain of custody. Each police official who exercised custody over the exhibits identified them and established "continuous custody which preserves the evidence in an unaltered state." *United States v. Nault,* 4 M.J. 318, 319–320 (C.M.A. 1978). Minor administrative discrepancies do not necessarily destroy the chain of custody. *See United States v. Shy,* 10 M.J. 582 (A.C.M.R.1980). In the absence of any evidence that the evidence was altered or comingled with evidence from other cases, we are satisfied that the chain of custody was established. *See generally United States v. Porter,* 12 M.J. 129 (C.M.A.1981); *United States v. Lewis,* 11 M.J. 188 (C.M.A.1981); *United States v. Courts,* 9 M.J. 285 (C.M.A. 1980).

#### IV. Rebuttal Testimony of Captain Neveau

■ The appellant testified on the merits, denying any involvement in drugs and claiming that the drugs found in his apartment were placed there by the informant, PFC Bowne. Captain Neveau, a government rebuttal witness, testified that the appellant told him that he wanted Captain Neveau to know that he was not a "big time drug dealer." The statement was made after the appellant was released from MP custody to Captain Neveau, a judge advocate who was the officer in charge of the Heilbronn legal office where the appellant was assigned as a legal clerk, while Captain Neveau was giving appellant a ride home. The appellant testified that he merely told Captain Neveau that he was not a drug dealer, without any characterization as "big-time" or otherwise.

The appellant contends that the military judge erred by receiving the evidence of his statement to Captain Neveau because his statement was privileged. We find his contention without merit. It is clear from the record of trial that Captain Neveau took custody of the appellant at the Military Police station in his capacity as appellant's supervisor, not as a defense counsel or even as a judge advocate; that the appellant understood that Captain Neveau was acting

in his capacity as his supervisor; that Captain Neveau told the appellant that he "wasn't interested" in appellant's case; and that the appellant's statement was not made in response to questioning. We are satisfied no attorney-client privilege existed between the appellant and Captain Neveau at the time of the statement or at any other time. We also find the appellant's statement ambiguous and of limited probative value. Even if improperly admitted, we doubt that it had any impact on the court members.

#### V. Failure to Call Witness Requested by the Court

■ After both sides had rested, a court member asked whether the confidential informant, PFC Bowne, would be called as a witness. The military judge informed the court member that the court could call Bowne·if they desired, and he asked the President, "Would you like to have him called?" The President responded, "Let me discuss that." The court then recessed for lunch. While the members were at lunch the military judge convened an Article 39(a), 10 U.S.C. § 839(a) session at which he announced that he was going to "turn down the request of the court," but that he would give either side an opportunity to call Bowne as a witness. Both sides declined. Earlier the individual defense counsel had stated that he did not desire to call Bowne as a defense witness because he believed that Bowne would lie, and he wanted to be able to impeach him. Neither the court members nor counsel made any further requests for witnesses.

We find that there was no request by the court for Bowne's testimony. Furthermore, assuming *arguendo* that the court member's question amounted to a request for Bowne's testimony, we hold that the military judge did not abuse his discretion by refusing to call a witness that neither party wanted. *See United States v. Lampani,* 14 M.J. 22, 26 (C.M.A.1982); Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 54*b.* Accordingly, we find the assigned error without merit.

## VI. The Sufficiency of the Evidence

The appellant contends that the evidence is insufficient as a matter of law and fact to support the findings of guilty, arguing that the government failed to prove that his possession of drugs was knowing and exclusive because others, including the informant, used the apartment. We disagree.

Regarding the sale of cocaine, the government's evidence shows that the informant, PFC Bowne, was strip-searched, given $100.00 in CID funds, and instructed to attempt to purchase drugs from the appellant. Bowne entered the apartment building, returned a few minutes later, and relinquished a paper packet of cocaine bearing the appellant's fingerprint. A few minutes later the money (identified by serial numbers) was found under a radio in the appellant's bedroom. The appellant denied selling cocaine to Bowne, stating that Bowne offered the money in reimbursement for use of the apartment and transportation to the airport. According to the appellant, Bowne apparently left the money under the radio after the appellant refused to accept it. Based upon the evidence of record, we are satisfied, as were the court members, that the appellant unlawfully sold cocaine to PFC Bowne.

Regarding the possession of marihuana and cocaine, the government's evidence established that all of the contraband except the marihuana seeds were secreted in a cardboard box inside the appellant's boot. One of the packets of cocaine inside the cardboard box bore the appellant's fingerprint. A rolled up plastic bag containing marihuana, also inside the cardboard box, bore the appellant's fingerprints in a location indicating that the appellant had removed the bag from the cardboard box and unrolled it.

Although the appellant claimed that the drugs belonged to Bowne, that he had ordered Bowne to remove them from the apartment and thought that Bowne had removed them, the court apparently found his testimony unworthy of belief. Their determination should not be lightly disregarded. *United States v. Frierson*, 20 U.S. C.M.A. 452, 454, 43 C.M.R. 292, 294 (1971); *United States v. Albright*, 9 U.S.C.M.A. 628, 631, 26 C.M.R. 408, 411 (1958); *United States v. Evans*, 6 M.J. 577, 579 (A.C.M.R. 1978), *pet. denied*, 6 M.J. 239 (C.M.A.1979). Based upon the evidence of record we are satisfied of the appellant's guilt, and we find the assigned error without merit.

The appellant also contends that the evidence fails to establish that his possession and sale of cocaine constitutes the possession and sale of a "habit-forming narcotic drug." This contention is without merit. *United States v. Ettleson*, 13 M.J. 348 (C.M. A.1982).

## VII. Improper Severance of Attorney-Client Relationship

After his request for Captain Bowe was denied, the appellant requested that Captain Hall be made available as his individual military defense counsel. Captain Hall's commander notified the appellant on 4 April 1979 that Captain Hall would be available, but pointed out that Captain Hall would be attending the military judge course from 21 May 1979 through 8 June 1979 and would be unavailable during that period. On 6 March 1979, the Acting Chief Trial Judge had notified Captain Hall of his selection as a military judge and advised him of his assignment to judicial duties beginning on 2 July 1979.

The appellant's trial began on 27 June and concluded on 9 July 1979. Captain Hall proceeded to his new duty station and commenced his judicial duties shortly after the trial was concluded. On 23 August 1979, the appellant requested that Captain Hall be given the opportunity to submit a brief to the convening authority prior to action on his case. By an undated letter from VII Corps, the appellant was advised that action would be taken by the Commander, V Corps, and that the Chief, US Army Trial Judiciary, had determined that Captain Hall should take no further part in the case since he was a full-time military judge. The appellant appealed this determination to the Commander, US Army Legal Services Agency, but was informed by letter

dated 20 September 1979 that Captain Hall was assigned as a full-time judge and "prohibited by regulation and the Code of Judicial Conduct from acting in any other capacity." Thereafter, the appellant refused to accept a Captain DeBusk as substitute counsel, discharged his detailed counsel who had been present throughout the trial, and requested that the record of trial and post-trial review be served on him so that he could act as his own counsel for the *Goode* review and Article 38(c), 10 U.S.C. § 838(c) brief. After a new review was completed in accordance with this Court's decision of 30 June 1981, the appellant again requested that Captain Hall (by then a major) perform the post-trial duties. His request again was denied on the same ground.

The appellant now contends that the conflict between Captain Hall's judicial duties and his duties as defense counsel "is born more of a predicament [which the government] created and nurtured, than of sound reason, policy and ethical considerations."

We disagree. In the first place, both the appellant and Captain Hall knew of Captain Hall's impending judicial assignment before an attorney-client privilege was formed. We are confident that Captain Hall was aware, at least after completion of his formal training in preparation for his assignment as a military judge, of the Code of Judicial Conduct which would govern his professional conduct. We believe that the appellant and his counsel share some responsibility for the conflict in duties.

■ Secondly, we believe that assignment to full time judicial duties constitutes "good cause" to sever an existing attorney-client relationship. Once an attorney-client relationship is established, the standard for determining whether it may be severed because of conflicting duties is "good cause" rather than "reasonable availability." *United States v. Rachels,* 6 M.J. 232, 234 (C.M.A.1979).

■ As acknowledged by the appellant, Canon 5 of the Code of Judicial Conduct of the American Bar Association states that "a judge should not practice law." Although

Canon 5 does not establish an absolute prohibition against the use of a judge as defense counsel in a case unrelated to his own court, it does constitute "good cause" for requiring a judge to terminate his involvement as counsel in a case. *United States v. Rachels, supra,* at 235. The Code of Judicial Conduct of the American Bar Association is applicable to Army trial judges. Army Regulation 27–10, Legal Services, Military Justice, 26 November 1968, as amended, paragraph 2–31. Although the appellant's case was not within the same judicial district as Captain Hall's court, we believe that the policy reasons behind the Code of Judicial Conduct are applicable to this case, *i.e.,* the need to avoid duties which detract from the time and attention of full time judges, and the need for a judge to avoid identification with the prosecution or defense function. *See United States v. Tomchek,* 4 M.J. 66 (C.M.A.1977). We find the assigned error without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge FULTON and Judge CLAUSE concur.